ROBERT S. HOLLINS, ADMINISTRATOR
OF JOHN HOLLINS,
vs.
CHARLES F. MAYER, AND OTHERS.

} MARCH TERM, 1851.

[VALIDITY OF ASSIGNMENT IN FAVOR OF CREDITORS—CONSTRUCTION OF DEEDS.]

A DEED conveying property, real and personal, in trust, to sell and apply the proceeds, 1st, to the payment of costs and commissions, and 2d, to the full payment of such creditors, named in an annexed schedule, as assent and release within a fixed time, "if the fund be sufficient for that purpose, and the balance, if any," to one of the grantors and his representatives, "but ratably and proportionably, according to the amount of the claims of each of said creditors, if the fund be insufficient to pay the whole ;" *provided,* the shares of the non-assenting creditors "shall not be distributed among the others," but shall be held by the trustees, "subject to the future order and control of" the said grantor, is valid.

The fund not proving sufficient to pay the assenting creditors in full, they can only receive dividends, in the proportion that their claims bear to the whole amount of claims specified in the schedule, and the surplus must be paid to the grantor.

The non-assenting creditors cannot claim this surplus, because they would then receive the same benefit under the deed as the assenting creditors, without complying with its terms, which would destroy a material stipulation of the deed, and defeat one of the principal inducements to its execution.

[A deed of trust was executed on the 15th of January, 1823, by John Hollins, Michael McBlair, and John Smith Hollins, conveying to certain trustees certain real and personal property, consisting of two pieces of land, situated in the city of Baltimore, and "all and singular the stocks, chattels, effects, claims, debts, and sums of money" specified in two schedules annexed to the deed, *in trust,* to sell and collect the same, and apply the money arising therefrom, in the *first* place, to the payment of the costs and expenses attending the execution of the trust, and a commission of twelve per cent. to the trustees, and in the *next* place, "to distribute and divide the whole of the residue of such moneys, or so much thereof as may be neces-

sary, to and amongst such of the creditors" of the grantors, named in another schedule annexed to the deed, "as shall, within six months from the date" thereof, "signify their assent to the terms of this deed, and execute and deliver to the" grantors "a full and final release and discharge of and from all claims, to the time of executing these presents, in full satisfaction and payment of all such claims of all such creditors assenting, as aforesaid, and executing such release, as aforesaid, if the fund be sufficient for that purpose, and the balance or surplus, if any may remain, shall and will pay over to the said John Hollins, or to his legal representatives ; but ratably and proportionably, accordingly to the amount of the claims of each of the said creditors, if the fund be insufficient to discharge the whole. *Provided* always, that the United States shall not be required to signify any assent, nor to execute such release, as aforesaid, to entitle them to a share of the proceeds or fund arising from this trust : and *provided*, also, that the proportion or share of such creditor or creditors, if any, as shall neglect, refuse, or omit to execute such assent or release, as aforesaid, shall not be distributed or divided amongst the other creditors, but shall be, by the said trustees, held subject to the future order and control of the said John Hollins, his executors, administrators, or assigns."

On the same day, the said John Hollins executed another deed, conveying other property, real and personal, to the *same* trustees, upon the *same* trusts, conditions, and provisos. Some of the creditors referred to assented to the deed, and executed the required releases, others did not.

Afterwards, in 1849, the trustees recovered, under the Commission between the United States and Mexico, a large sum of money, upon one of the claims assigned to them by these deeds, a large portion of which they divided, according to the terms of the trust, among the assenting creditors, but there still remained about $5,000 in their hands, undivided. John Hollins died in 1827, and his administrator, on the 8th of April, 1850, filed the present bill against the trustees, to recover the said balance of $5,000, according to the terms of the said deeds.

The trustees declined to pay over the money, except upon the order of the Court, and submitted whether this undivided residue should be paid to the complainant or to the creditors who had not assented to the deeds. The Chancellor, when the cause was first submitted to him, on the 12th of April, 1850, made the following remarks.]

THE CHANCELLOR:

Assuming the validity of the deeds of trust exhibited with the bill, I am of opinion that the sum now remaining in the hands of the trustees, is, in the language of Exhibit A, "subject to the order and control of John Hollins, his executors, administrators, or assigns," and that upon the death of said Hollins, the complainant, his administrator, may rightfully demand it of the trustees, who would not be in any way responsible for its application by the administrator.

It may, however, be a question whether these deeds can be assumed to be valid. In the case of *Albert and Wife* vs. *Jones et al.*, decided at the last term of the Court of Appeals, a deed with such stipulations was adjudged to be invalid (7 *Gill*, 446), but in the subsequent case of *Kettlewell* vs. *Stewart*, the Court permitted the same question to be re-argued, and now hold it under advisement. It would, therefore, seem to be best to defer the decision of this case until the Court of Appeals shall have pronounced their opinion in the cause now before them, which will probably be in June next, and which, it is presumed, will finally settle this much vexed question.

[The cause was again submitted and argued, on the 11th of March, 1851, when the Chancellor delivered the following opinion.]

THE CHANCELLOR:

In the remarks made by me in this case, on the 12th April, 1850, it was suggested that the decision of the point involved in it be suspended until the case of *Kettlewell* vs. *Stewart*, then depending in the Court of Appeals, should be decided. That

case has since been decided, and although the validity of the deed drawn in question was affirmed by a divided Court (8 *Gill*, 472), I consider that I am obeying the weight of judicial authority in this State, in declaring the deeds in this case to be valid instruments.    This being so, I see no reason to deviate from the conclusion to which I came when this case was before me twelve months ago.    That conclusion was, assuming the deeds of trust to be good, "that the sum now remaining in the hands of the trustees should be subject to the order and control of John Hollins, his executors, administrators, and assigns," "and that, upon the death of Hollins, the complainant, his administrator, might rightfully demand it of the trustees, who would not be in any way responsible for its application by the administrator."    The deed in this case, after providing for the payment of the expenses of the trust and a commission to the trustees, and for those of the creditors who should comply with the condition, by executing to the grantors "a full and final release and discharge of and from all claims to the date of the conveyance, in full satisfaction and payment of all such claims of all such creditors assenting as aforesaid, and executing such releases as aforesaid, if the fund be sufficient for that purpose, and the balance or surplus, if any may remain, *shall and will pay over to the said John Hollins, or to his legal representatives,* but ratably and proportionally, according to the amount of the claims of each of the said creditors, if the fund be insufficient to discharge the whole," contains this further provision, "that the proportion or share of such creditors, if any, as neglect, refuse, or omit to execute such assent or release as aforesaid, shall not be distributed or divided amongst the other creditors, but shall be by the said trustees held subject to the future order and control of the said John Hollins, his executors," &c.

It is clear, then, upon the terms of this deed, that the dividends, which would otherwise have been distributed to those creditors who failed or refused to sign the required release, were not to be paid to the creditors who did release, in the event of their not being paid in full, but those dividends were to be paid to John Hollins, one of the grantors.    The assent-

ing creditors, therefore, were to be paid no more than the dividends of the trust fund, distributable to their respective claims, and in ascertaining the amount of such dividends, regard was to be had to the whole amount of claims specified in the schedules attached to the deed. If the trust fund should prove to be inadequate to the payment of all the creditors, the assenting creditors were to receive only dividends, and were not to have divided among them the shares of the creditors who refused to comply with the conditions of the deed, but those shares, by its explicit terms, were to be held " subject to the demand and control of John Hollins," &c.

The argument, therefore, that these dividends should be divided among the creditors who executed the releases, is in direct conflict with the provisions of the deed, to the terms and conditions of which they gave their positive assent, and the benefit of which, in consideration of that assent, they have enjoyed by receiving the dividends, which otherwise they could not have claimed.

The argument, also, that the creditors who have not assented are entitled to the benefit of this fund, cannot, I think, be maintained, because in that case they would, without complying with the terms of the deed, receive the same benefit under it as those who did assent to it, by releasing the grantors. It would in effect be destroying a most material stipulation of the deed, and defeat one of the principal inducements to its execution.

It is said, however, in the argument of the defendant's solicitor, that John Hollins has over this fund no more than a *power of appointment*. I do not concur in this argument. It is clear beyond controversy that this surplus, according to the provisions of the deed, was neither to be paid to the assenting or dissenting creditors, but, in the language employed in the instrument, was to be held by the trustees, " subject to the order and control of John Hollins, his executors, administrators, or assigns." The surplus, therefore, after paying the dividends of the releasing creditors, was to go back to John

Hollins. It was to be held by the trustees subject to his order and control, or the order and control of his executors or administrators.

I am therefore of opinion that the fund remaining in the hands of the trustees, after paying the expenses of the trust, the commissions to the trustees, the dividends of the creditors who have executed releases, and the United States, is payable to the complainant, as the administrator of John Hollins.

It appears by an agreement filed on the 8th of April, 1850, that the United States has been paid, and that the balance of the trust fund now in the hands of the trustees is the proportion thereof which would have belonged to the creditors named in the deed who did not execute the required release, if they had signed it. It is therefore supposed the Court might now pass a decree for the payment of the five thousand dollars claimed by the bill, but as I am not quite sure whether all the expenses of the trust have been provided for, and the five thousand dollars is the precise sum for which a decree shall pass, I will refrain from signing it now. The counsel may prepare a decree in which a provision must be inserted for the payment of the costs of this cause out of the fund. The trustees were, under the circumstances, perfectly justifiable in declining to part with the fund until protected by a decree.

BROWN and BRUNE, for Complainants.
CHARLES F. MAYER, for Defendants.